UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 4:19-cr-14 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| JOSHUA'A RAMELLE VAUGHN and ) | |
| SEAN DORIAN SHINN ) | |

# M E M O R A N D U M

Defendants Joshua'a Ramelle Vaughn and Sean Dorian Shinn have been charged with conspiracy to distribute fentanyl and heroin, possession with intent to distribute fentanyl and heroin, and with possessing a firearm in furtherance of a drug trafficking crime. (Doc. 1.) Defendant Vaughn is also charged with being a felon in possession of a firearm. (*Id.*)

The matter is now before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Susan K. Lee, recommending the Court deny Defendants' motion to suppress the evidence obtained as a result of the July 12, 2018, search of Defendant Vaughn's apartment. (Doc. 53.) Defendants have objected to the R&R. (Doc. 54.) The United States ("the Government") has filed a response in opposition to the objection. (Doc. 55.)

## I. BACKGROUND

The R&R sets out a detailed summary of the events that occurred on July 12, 2018, based on the stipulated testimony of 17th Judicial District Drug Task Force ("Task Force") Special Agent John Lasater and the live testimony of Metropolitan Nashville Police Department ("MNPD") Detective Robert Ruiz, Task Force Special Agent Jose Ramirez, Task Force Special Agent Kyle Brewer, and Task Force Assistant Director/Special Agent Shane George. (Doc. 53.)

The Magistrate Judge noted there were some differences in the witnesses' testimony, but found such inconsistencies did not make the pertinent testimony untrustworthy. Defendants object

to this finding, but have failed to explain why the Court should reject it. (*See* Doc. 54 at 1.) Based on the Court's review of the testimony and the Magistrate Judge's determination as to the witnesses' credibility, *see United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003) (explaining the Magistrate Judge's credibility assessment is entitled to deference), the Court will adopt the finding that the inconsistencies impact only the strength of certain testimony.

The following is a summary of the factual background in this matter derived from the R&R and evidence presented at the suppression hearings.

On July 12, 2018, MNPD and Task Force officers were conducting surveillance at Park Trail Apartments in Shelbyville, Tennessee, to locate and arrest Marquavis Lytle ("Lytle"), an individual believed to be involved in dangerous gang-related drug trafficking and violent shootings in the Nashville area. The surveillance was focused on Building 5 because historic cell site location data had placed a cell phone, believed to belong to Lytle,[1] at that location.

Before anyone else was seen entering or leaving Building 5, law enforcement observed a black male exit the building and leave the parking lot in a black Chevrolet Equinox. The vehicle had a Florida tag and the officers determined it was a rental car, which was unusual for the location. As the vehicle drove past Detective Ruiz, he determined the driver was not Lytle, but he thought the driver looked like Lytle's associate, De Angelo Young ("Young"), who also had outstanding arrest warrants. Detective Ruiz relayed this information to Agent Brewer who conveyed it to the other Task Force agents. A short time later, the cell phone location data indicated Lytle's cell phone was now mobile, leading Detective Ruiz to conclude the driver left with Lytle's cell phone,

---

[1] The telephone number associated with the cell phone was used to facilitate a controlled purchase of heroin from Lytle in April 2018.

which reinforced his conclusion that the driver was Young. The officers agreed the driver should be detained if he returned to the apartment complex.

Ten to twenty-five minutes later, the driver returned to the parking lot and was observed speaking to another individual before parking next to Agent Ramirez's undercover vehicle. The subsequent events took place concurrently or in rapid succession. Agent Ramirez exited his vehicle and placed the driver, later identified as Defendant Vaughn, in handcuffs. Then, Detective Ruiz approached the driver and immediately recognized he was not Young, which he communicated to the officers at the arrest scene. Defendant Vaughn gave officers his name, but did not have any identification for officers to verify his claimed identity.

Meanwhile, Agent Brewer questioned the individual Defendant Vaughn was seen speaking with moments earlier. Agent Brewer learned the individual lived at the complex and had seen Defendant Vaughn there before. The individual then indicated where Defendant Vaughn lived— the first apartment on the right on the first floor of Building 5. Agent Brewer testified that at this point he had not spoken with Detective Ruiz and was not aware that the arrested driver, Defendant Vaughn, was not Young.

As Agent Brewer was interviewing the neighbor, Agent George and Agent Lasater began approaching Building 5 to conduct a knock and talk at each apartment unit. Agent Brewer told them the location of Defendant Vaughn's apartment because he still believed Defendant Vaughn was Lytle's associate, Young. Agent George and Agent Lasater then went straight to Defendant Vaughn's apartment to knock on the door. A man, later identified as Defendant Shinn, opened the apartment door about a foot wide, and Agent George immediately smelled both raw and burnt marijuana. Defendant Shinn then tried to close the door, but Agent George prevented him from

doing so and told him he needed to step inside to discuss the odor of marijuana emanating from the apartment.

After entering the apartment, Agent George saw a small amount of marijuana residue and burnt roaches on the coffee table along with a powder he suspected was heroin. Defendant Shinn was detained and frisked, and law enforcement conducted a protective sweep of the apartment. Agent Brewer entered the apartment ten to twenty minutes later and informed Agent George that the arrested driver was not Young, as they originally believed. Agent Brewer then returned to his office to write an affidavit for a warrant to search Defendant Vaughn's apartment (the "July Affidavit"). Agent Brewer obtained the search warrant and a search was conducted on July 12, 2018. Several months later, in December 2018, Agent Brewer applied for a second warrant to seize and search several cell phones collected in the July search of Defendant Vaughn's apartment, including the one tracked on July 12, 2018. Another search warrant was issued (the "December Warrant") and additional evidence was obtained.

Based on the evidence obtained in these searches, Defendants Vaughn and Shinn were charged with conspiracy to distribute forty grams or more of a mixture and substance containing a detectable amount of fentanyl and 100 grams or more of a mixture and substance containing a detectable amount of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B); possession with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; possession with intent to distribute more than forty grams of fentanyl in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2. (Doc. 1.) Defendant Vaughn is also charged with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (*Id.*)

On July 8, 2019, Defendants filed a motion to suppress all evidence obtained as a result of Defendants' detentions and the search of Defendant Vaughn's apartment. (Doc. 25.) The Government responded in opposition (Doc. 30), and Defendants replied (Doc. 33). The Magistrate Judge held a hearing on Defendants' motion on August 14 and 26, 2019. (Docs. 34, 35, 38, 39.) After the hearings, the parties submitted additional briefing on the issues. (Docs. 43, 49, 51.)

Following the hearing, the Magistrate Judge issued an R&R pursuant to 28 U.S.C. § 636(b)(1)(B), recommending the Court deny Defendants' motion to suppress. (Doc. 53.)

In the R&R, the Magistrate Judge first discussed the validity of Defendant Vaughn's detention. The Magistrate Judge concluded that law enforcement had probable cause to arrest Defendant Vaughn initially because the officers reasonably mistook him for Young, who had outstanding arrest warrants. (*Id.* at 20–21(quoting *Hill v. California*, 401 U.S. 797, 802 (1971)).) Although probable cause dissipated when Detective Ruiz recognized Defendant Vaughn was not Young, the Magistrate Judge found the continued detention did not last longer than necessary to accomplish the purpose of the stop. (*Id.* at 23.)

The Magistrate Judge then considered the validity of the knock and talk and protective sweep of Defendant Vaughn's apartment. The Magistrate Judge noted Defendants did not directly dispute whether the officers could engage in a knock and talk, but instead contended that by determining the location of Defendant Vaughn's apartment while he was detained, the knock and talk was unlawful. (*Id.* at 26.) The Magistrate Judge explained that the knock and talk was not tainted by Defendant Vaughn's detention because the location of the apartment was gleaned from a neighbor and occurred before Agent George and Agent Lasater learned Defendant Vaughn was not Young. (*Id.* at 26.) The Magistrate Judge also found the evidence viewed during the protective sweep could be excluded from the July Affidavit without eliminating probable cause and thus did

not address whether the odor of marijuana alone provided a sufficient basis for the protective sweep. (*Id.* at 33.)

The Magistrate Judge next discussed the validity of the July search warrant. The Magistrate Judge noted there was one materially false statement—that the detained driver had outstanding arrest warrants—and a false impression created that the detained driver was a sought-after fugitive. Even with that information excised from the July Affidavit and additional information included to clarify Defendant Vaughn's identity, the Magistrate Judge found the affidavit still stated that the officers detected a strong smell of marijuana emanating from the apartment, which provided probable cause to issue a search warrant. (*Id.* at 37.) Finally, the Magistrate Judge explained that Defendants did not assert there was any basis for attacking the December Warrant if the fruits of the July search were not suppressed. (*Id.* at 43.) Thus, the Magistrate Judge recommended the Court deny Defendants' motion to suppress. (*Id.*)

## II.    STANDARD OF REVIEW

This Court must conduct a *de novo* review of the portions of the R&R to which objection is made and may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1).

*De novo* review does not require the district court to rehear witnesses whose testimony has already been evaluated by the Magistrate Judge. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). The Magistrate Judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting her in the best position to determine the witnesses' credibility. *See Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002) (citing *Peveler v. United States*, 269 F.3d 693, 702 (6th Cir. 2001)); *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir.

1999). The Magistrate Judge's assessment of the witnesses' testimony is therefore entitled to deference. *See Irorere*, 69 F. App'x at 236.

## III. <u>DISCUSSION</u>

Defendants raise four main objections to the analysis portion of the R&R. (Doc. 54.) Defendants contend (1) Defendant Vaughn's detention lasted longer than necessary and tainted the knock and talk; (2) Agent George and Agent Lasater could not have smelled the odor of marijuana when the door first opened; (3) the protective sweep was unlawful; and (4) the exclusionary rule should apply because Agent Brewer included false statements in his July Affidavit. (*Id.*) The Court will consider each objection in turn.

### A. The Validity of Defendant Vaughn's Detention

Defendants object to the finding that Defendant Vaughn's detention did not exceed the time necessary for the stop's purpose. (Doc. 54.) Defendants contend Detective Ruiz was familiar enough with Young to know instantly that Defendant Vaughn was not Young and the stop should have ended at that moment. (*Id.*) Defendants assert that this identification occurred before officers knocked on the apartment door and law enforcement could not have identified Defendant Vaughn's apartment if the detention ended when Detective Ruiz recognized Defendant Vaughn was not Young. (*Id.*) As a result, Defendants contend all evidence from the knock and talk should be excluded. (*Id.*)

Because Defendants object only to the length of the detention after Defendant Vaughn was identified, the Court need not review *de novo* the Magistrate Judge's finding that Defendant Vaughn's initial arrest was supported by probable cause. *See* 28 U.S.C. § 636(b)(1). The Court agrees with her finding that the officers had probable cause to arrest Defendant Vaughn because they were reasonably mistaken as to his identity, and thus will adopt this finding.

The only issue the Court must consider, then, is whether Defendant Vaughn's detention, after probable cause for the arrest dissipated, lasted longer than necessary to effectuate its purpose.

An individual may be briefly stopped and questioned by police if police have a reasonable suspicion, stemming from specific and articulable facts, for believing the individual is engaged in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968). Reasonable suspicion requires more than a hunch, but "is considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). All that is needed is "a minimal level of objective justification" for the stop. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). In addition, there is no strict time limit on *Terry* stops because the court must "consider the law enforcement purposes to be served by the stop as well as the time reasonably needed to effectuate those purposes." *United States v. Sharpe*, 470 U.S. 675, 685 (1985). "When an officer's initial queries do not dispel the suspicion that warranted the stop, further detention and questioning are appropriate." *Houston v. Clark Cty. Sheriff Deputy John Does 1–5*, 174 F.3d 809, 815 (6th Cir. 1999).

Here, Defendant Vaughn was initially stopped because officers believed he was Lytle's associate, Young. After Detective Ruiz determined Defendant Vaughn was not Young, the officers still had to determine who he actually was and if he was connected to Lytle. Defendant Vaughn was the only person who left the building officers were surveilling, and when he left, the location tracking data indicated Lytle's cell phone was no longer located in Building 5. Thus, the officers had specific and articulable reasons for believing Defendant Vaughn might be connected to Lytle. Accordingly, the Court agrees with the Magistrate Judge's finding that the officers could reasonably investigate and request identification from Defendant Vaughn to determine who he was and if he was connected in any way to Lytle. There is no evidence to suggest this investigation

took longer than needed to determine Defendant Vaughn's identity and his connection to Lytle, particularly considering Defendant Vaughn lacked any identification to verify his claimed identity. As a result, the Court finds the detention was not longer than necessary to effectuate the purpose of the stop.

Defendants' other assertions, that the officers knew Defendant Vaughn's identity before conducting the knock and talk and could not have conducted it without his continued detention, are contradicted by the officers' testimony and the Court's findings. Detective Ruiz, Agent Ramirez, Agent George, and Agent Brewer all testified that Agent George and Agent Lasater left for the knock and talk before Defendant Vaughn was properly identified. (Doc. 37 at 45 [lines 5–25], 46 [lines 1–10, 94, lines 3–13], 134 [lines 1–14], 183 [lines 3–25].) The Magistrate Judge had the opportunity to evaluate the witnesses' credibility, and found the officers were credible in their recollection of the timeline of events. *See Irorere*, 69 F. App'x at 236. The Court thus finds that the officers conducting the knock and talk were not aware of the mistaken identity until after the knock and talk was completed. Further, the Court has already determined Defendant Vaughn's continued detention was lawful, as it did not last longer than necessary to effectuate its purpose, and thus did not taint the knock and talk.

Accordingly, the Court will deny Defendants' objection to this portion of the R&R.

### B.     The Agents' Ability to Detect Marijuana

Defendants next object to the finding that Agent George and Agent Lasater were able to smell marijuana when Defendant Shinn first opened the door to Apartment 56. (Doc. 54.) Defendants note that Agent Brewer, who entered the apartment after the knock and talk, testified that he smelled marijuana only while inside the apartment, and not while in the doorway or outside the apartment. (*Id.* at 3.) Thus, Agent George "likely did not smell marijuana until he, too, actually

entered the apartment." (*Id.*) Defendants also contend "[i]t defies logic that such a small amount of marijuana would give off a 'strong' odor considering there were only 'remnants' found." (*Id.* at 5.) Defendants further challenge the agents' ability to smell the marijuana based on thermodynamics. (*Id.*) Defendants contend it was likely hotter outside the apartment than inside it, meaning hot air would have rushed into the apartment when the door opened. (*Id.* at 8–9.) Thus, Defendants assert it is more likely that the officers did not smell marijuana until they actually entered the apartment. (*Id.*) Finally, Defendants contend that even if the officers did smell an odor, it could have been hemp, which is legal under both Tennessee and federal law. (*Id.* at 9–10.) As a result, the officers were not permitted to enter the apartment based on the smell alone, and anything observed when the door was pushed open was not viewed from a lawful vantage point and should be excluded. (*Id.*)

There is an implied consent for law enforcement, as members of the public, to approach an unobstructed residence and knock on the front door. *Kentucky v. King*, 563 U.S. 452, 469–70 (2011). Because the Court has already found Defendant Vaughn's detention did not taint the knock and talk, the only remaining objection to consider is whether Agent George's and Agent Lasater's testimony, that they smelled marijuana as soon as Defendant Shinn opened the door, is credible.

In this case, the Magistrate Judge listened to the witnesses' testimony and thus the Court will defer to her assessment of credibility, unless there is reason to question it. *United States v. Solomon*, No. 13-40-ART-(5), 2015 WL 5474395, *4 (E.D. Ky. Sept. 17, 2015) (giving "great weight" to the credibility assessment of the magistrate judge) (quoting *United States v. Johnson*, No. 10-20176, 2011 WL 3844194, at *2 (W.D. Tenn. Aug. 30, 2011)).

The Magistrate Judge credited the officers' testimony because (1) all of the officers testified they smelled some form of marijuana; (2) Agent George never wavered from his

testimony that he smelled marijuana as soon as the door opened; and (3) a small amount of marijuana was found in the apartment, further supporting the officers' testimony. (Doc. 53 at 29–30.) The Magistrate Judge noted there were some inconsistencies among the officers' testimony, but explained that some inconsistencies "should be expected given the number of officers involved, the lapse of time, and the fast-moving circumstances." (*Id.* at 31.)

Based on a review of the officers' testimony and consideration of Defendants' arguments, the Court finds there is no reason to question the Magistrate Judge's credibility determination.

As the Magistrate Judge explained, it is entirely credible that Agent George and Agent Lasater noticed the smell of marijuana as soon as the door opened while Agent Brewer did not notice the smell until he was inside the apartment. Agent Brewer entered the apartment after it was already secured, meaning he likely did not pause at the doorway once the apartment door opened, as Agent George and Agent Lasater did.

The Court finds Defendants' next two contentions, that the officers' ability to smell marijuana at the doorway defies logic and the rules of thermodynamics, unpersuasive. Defendants have offered no evidence to demonstrate how a small amount of marijuana cannot be detected by smell, other than to say it defies logic. Simply stating something is illogical is insufficient, particularly when all three officers credibly testified to detecting the odor of marijuana even though only a small amount of marijuana was present. Defendants have also failed to explain how hot air rushing into a colder room would prevent an individual from being able to detect odors emanating from the room. The source Defendants reference appears to provide advice on improving the efficiency of home cooling and heating systems. *See Thermodynamics for Idiots*, NETWORX, https://www.networx.com/article/thermodynamics-for-idiots, (last accessed Dec. 11, 2019). The article discusses how heat constantly seeks equilibrium, but does not contend the movement of

heat into colder rooms prevents smells from being perceived. *Id.* Thus, the Court finds Defendants' contentions fail to undermine the credibility of the officers' testimony that they detected the odor of marijuana when the door first opened.

Turning finally to Defendants' assertion that the odor detected could have been hemp, the Court agrees with the Government that Defendants waived this argument by failing to raise it previously without offering a compelling reason for this failure. *See Murr v. United States*, 200 F.3d 895, 901 n.1 (6th Cir. 2000) (explaining parties are not permitted to raise new arguments not presented to the magistrate judge absent compelling reasons). Nonetheless, the argument fails on its merits as well. Probable cause for a search warrant requires "a fair probability, given the totality of the circumstances, that contraband or evidence will be found in a particular place." *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001) (internal quotation marks omitted) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). Absolute certainty is not required. *See id.* As a result, Defendants' contention that the smell could have been hemp does not change the fact that it also could be, and was, marijuana. The officers' detection of a marijuana odor meant there was a fair probability that marijuana would be found within the apartment, which is sufficient for probable cause.

Defendants' arguments fail to convince the Court the Magistrate Judge was incorrect in her credibility assessment. The Court agrees with the Magistrate Judge's finding that Agent George and Agent Lasater were credible in their testimony. Thus, the Court will deny Defendants' objection to this finding.

## C.    Lawfulness of the Protective Sweep

Defendants contend that the protective sweep of Defendant Vaughn's apartment was unlawful. (Doc. 54 at 11.) The Magistrate Judge, however, did not making a finding on the

lawfulness of the protective sweep, because she determined that anything found in the sweep could be excluded from the July Affidavit and probable cause would still exist. As set out in greater detail below, the Court finds the evidence viewed during the protective sweep can be excised from the July Affidavit and there would still be probable cause to issue the search warrant. Accordingly, the Court will not address the lawfulness of the protective sweep.

### D. Falsity of Information in July Affidavit

Finally, Defendants argue the evidence recovered from the July search should be excluded in part because Agent Brewer provided false information in his July Affidavit. (Doc. 54.)

"[A] search based on a warrant that contains deliberately or recklessly false allegations is invalid unless the remaining portions of the affidavit provide probable cause." *United States v. Charles*, 138 F.3d 257, 263 (6th Cir. 1998) (citing *Franks v. Delaware*, 438 U.S. 154 (1978)); *see also United States v. Hammond*, 351 F.3d 765, 771 (6th Cir. 2003) ("[t]he critical question to be determined is whether the affidavit, apart from the tainted information that is either inaccurate or illegally obtained, provides the requisite probable cause to sustain a search warrant."). Similarly, if an "affiant engaged in 'deliberate falsehood' or 'reckless disregard for the truth' in omitting information from the affidavit, the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists." *United States v. Atkin*, 107 F.1213, 1217 (6th Cir. 1997) (citing *United States v. Bonds*, 12 F.3d 540, 568 n. 26 (6th Cir. 1993)).

Here, the Court agrees with the Magistrate Judge's finding that the July Affidavit contains one material false statement: "[A]gents observed a black male exit building 5 and walk to a Black Chevrolet Equinox with Florida tags. Metro-Nashville Officers were familiar with the black male subject and stated that he also had warrants out of Davidson County, Tennessee." (Doc. 25-1 at 3.) This statement suggests Defendant Vaughn had outstanding arrest warrants, which was not

true.  The Court also agrees with the Magistrate Judge's finding that the affidavit creates a false impression that Defendant Vaughn was a known fugitive.

Agent Brewer testified that the errors in the affidavit were a mistake and he could have written the affidavit differently to more accurately explain what occurred.  (Doc. 37 at 223.) However, even if the Court assumes the inaccurate statement and false impression were included deliberately or in reckless disregard for the truth, the warrant is only invalid if what remains after excising that information and adding in omitted information does not support probable cause.  *See Charles*, 138 F.3d at 263; *Atkin*, 107 F.3d at 1217.  Excising the inaccurate information and evidence observed during the protective sweep and adding the omitted information regarding Defendant Vaughn's lack of any connection to Lytle still leaves the following:

> While agents spoke with the black male in the parking lot, Assistant Director Shane George and Special Agent John Lasater approached and knocked at the front door of apartment 56.  The door was opened by a black male.  At that time AD George noticed the very strong odor of marijuana emitting from the interior of the residence.  AD George informed the subject that he needed to step inside and speak with him about the odor of marijuana coming from the apartment.

(Doc. 25-1 at 3.)  The Court finds that this is sufficient to establish probable cause.

"Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence will be found in a particular place." *Greene*, 250 F.3d at 479 (internal quotation marks omitted) (quoting *Davidson*, 936 F.2d at 859).  An officer's affidavit "must suggest 'that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought.'"  *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006).

Generally, an "odor" that is "sufficiently distinctive to identify a forbidden substance . . . might very well be . . . evidence of the most persuasive character." *Johnson v. United States*, 333 U.S. 10, 13 (1948).  Courts have consistently held the smell of marijuana is sufficient to establish

probable cause to search a vehicle.  *See, e.g., United States v. Garza*, 10 F.3d 1241, 1246 (6th Cir.

1993) ("smelling marijuana . . . constituted probable cause to believe that there was marijuana in

the vehicle"); *United States v. Foster*, 376 F.3d 577, 588 (6th Cir. 2004) (same).  The difference

between a vehicle search and a search of a residence "is *who* gets to make the probable cause

determination, not *what* constitutes probable cause."  *United States v. Rounsaville*, No. 1:17-cr-

69-4, 2018 WL 4909903, at *7 (E.D. Tenn. Oct. 10, 2018) (emphasis in original).  Indeed, the

Sixth Circuit Court of Appeals has stated that the smell of marijuana alone could be sufficient to

support probable cause to search a residence as well.  *United States v. Elkins*, 300 F.3d 638, 659

(6th Cir. 2002) (explaining the smell of marijuana in an automobile can establish probable cause

to search and "[t]he same may be true when marijuana is smelled within a home"); *United States

v. Yarbrough*, 272 F. App'x 438, 443 (6th Cir. 2007) (same) (citing *Elkins*, 300 F.3d at 659).[2]

Most recently in *United States v. Porter*, the Sixth Circuit explained probable cause to enter a

residence existed in part because "three officers smelled a strong odor coming from within the

home and recognized it as the distinctive fragrance of marijuana, which is not permitted for

medical or recreational use in Tennessee."  774 F. App'x 978, 979 (6th Cir. Aug. 19, 2019).  Even

---

[2] Courts in other jurisdictions have also held that the smell of marijuana can provide probable cause to search a residence.  *See, e.g., United States v. Garcia-Zambrano*, 530 F.3d 1249, 1260 (10th Cir. 2008) (holding that frequent observations of the smell of marijuana combined with a recent observation of the odor provided probable cause to believe illegal drugs would be located in the apartment); *United States v. Cephas*, 254 F.3d 488, 495 (4th Cir. 2001) (explaining that smell of marijuana coming from apartment "would almost certainly have given Sergeant Shapiro probable cause to believe that contraband—marijuana—was present in the apartment."); *State v. Watts*, 801 N.W.2d 845, 854 (Iowa 2011) (holding the smell of marijuana emanating from apartment after door was opened "provided probable cause for issuance of the warrant"); *United States v. McMillion*, 472 F. App'x 138, 141 (3d Cir. 2012) (explaining probable cause existed where officers followed the smell of marijuana to defendant's apartment); *Gompf v. State*, 120 P.3d 980, 986 (Wyo. 2005) (holding that once officers smelled burnt marijuana, they had probable cause for a search warrant); *State v. Rein*, 923 P.2d 639, 640 (Or. 1996) (holding, after excising unlawfully obtained evidence from the officer's affidavit, the smell of marijuana standing alone was sufficient evidence to support probable cause).

with the offending information excised from the July Affidavit and omitted information included, the affidavit stated officers smelled marijuana when the door opened, meaning there was a fair probability that marijuana would be found inside. Thus, the Court finds that the July Affidavit provided probable cause to support the issuance of the search warrant.

As a result, the exclusionary rule is not applicable and the Court will deny Defendants' objection to this finding.

IV. **<u>CONCLUSION</u>**

After reviewing the record, the Court will **OVERRULE** Defendants' objections (Doc. 54), **ACCEPT** the R&R (Doc. 53) and **DENY** Defendants' motion to suppress (Doc. 25).

**An appropriate order will enter.**

**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**